UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JOHN WOODSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 7:21-cv-73-GMB |
| | ) |
| KILOLO KIJAKAZI,[1] Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

On February 22, 2019, Plaintiff John Woodson filed an application for a period of disability and disability insurance benefits ("DIB") and social security income ("SSI") with an alleged disability onset date of August 15, 2017. Woodson's application for benefits was denied on June 28, 2019. He then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on May 7, 2020 and denied Woodson's claims on July 27, 2020. Woodson requested a review of the ALJ's decision by the Appeals Council, which declined review on November 19, 2020. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

July 27, 2020.

Woodson's case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Under 28 U.S.C § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 9.  Based on a review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be affirmed.

## I.  STANDARD OF REVIEW[2]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the

---

[2] In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI").  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates.  The same applies to citations for statutes or regulations found in excerpted court decisions.

Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning

3

to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Woodson bears the burden of proving that he is disabled and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

> (1) Is the claimant presently unable to engage in substantial gainful activity?
> (2) Are the claimant's impairments severe?
> (3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the claimant unable to perform his former occupation?
> (5) Is the claimant unable to perform other work given his residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

Applying the sequential evaluation process, the ALJ found that Woodson had not engaged in substantial gainful activity since his alleged onset date. R. 18. At step two, the ALJ found that Woodson suffered from the following severe impairments: depression, anxiety, bipolar disorder, obesity, and seizure disorder. R. 18. The ALJ considered the four areas of mental functioning known as "paragraph B" criteria in finding that Woodson's mental impairments were not

severe. R. 19. The ALJ found that Woodson had a moderate limitation in all four functional areas: understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing himself.

At step three, the ALJ found that Woodson did not have an impairment or combination of impairments meeting or medically equal to the severity of any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 18. Before proceeding to step four, the ALJ determined that Woodson had the Residual Functional Capacity ("RFC") to perform medium work as defined by 20 C.F.R. § 404.1567(b) and § 416.967(b), except that he would be

> limited to never climbing ladder ropes or scaffolds; avoiding concentrated exposure to extreme heat; avoid all exposure to dangerous moving machinery; never work at unprotected heights; no commercial driving; and never work around large open bodies of water.

R. 20. The ALJ also found that Woodson

> can understand, remember, and carry out simple instructions; can maintain attention and concentration for two-hour periods at a time; can have occasional and casual interaction with the general public; can have casual interaction with coworkers; can adapt to routine and infrequent workplace changes; and make simple work related decisions.

R. 20 In reaching these opinions, the ALJ stated that she considered Woodson's symptoms, medical opinions, and prior administrative medical findings in accordance with 20 C.F.R. § 404.1520c and § 416.920c. R. 21.

The ALJ next determined that Woodson was not able to perform any past relevant work. R. 26. The ALJ asked a Vocational Expert ("VE")

> whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all these factors the individual would be able to perform the requirements of representative occupations such as: Industrial Cleaner . . . , Washer . . . , Dining Room Attendant . . . , [and] Hand Packer.

R. 27. The ALJ credited this testimony and therefore found, at step five, that Woodson was not disabled from August 15, 2017, the alleged onset date, through July 27, 2020, the date of the decision. R. 28.

### III.  RELEVANT FACTUAL BACKGROUND

Woodson was born on February 19, 1980, and he was 40 years old on the date of the hearing before the ALJ. R. 47 & 183. He earned his GED in 1998 and completed a few semesters of coursework at a community college. R. 224 & 883. He has worked as an assembler and quality control supervisor for an automotive supplier, and later at a trucking company. R. 64–65.

Woodson testified that he is no longer able to work because he has uncontrolled seizures. R. 40. He averages one seizure every two to three months and has memory problems because of his seizures. R. 40. The seizures typically last about five minutes, sometimes cause him to stiffen up and become unconscious, and it takes Woodson as much as 30 minutes to recover from each seizure. R. 41.

7

Woodson is not able to drive because of his seizures. R. 56–57, 248. He takes medications that help to control the frequency of his seizures and to reduce his recovery time. R. 42–43.

Woodson also testified that he has ankle pain and has worn braces to manage this pain since 2003. R. 43. A birth defect causes his ankle pain and also affects his shoulders. R. 45. Doctors have recommended surgery to fuse the bones in his ankles. R. 43. Woodson is able to walk without a cane, walker, crutches, or any other assistive device. R. 44.

Woodson has been diagnosed with bipolar disorder. R. 48, 349. He testified that he prefers to be alone when he is depressed, but explained that he is a "rapid cycler," his mood fluctuates weekly, and he has brief flashbacks. R. 48 & 60.

Woodson lives with his fiancée and child. R. 49. His mother and fiancée help him to care for his son, but Woodson watches his child while his fiancée is at work. R. 49–50, 248. During an average day, Woodson makes breakfast for his son, takes his medication, spends time with his son, and naps from noon to 2:30 p.m. R. 50. His neighbor cares for his son while he naps. R. 50. Woodson picks up around the house, wipes the counters, and vacuums. R. 50, 249.

Woodson testified that he has a short attention span and can only concentrate on a normal task for about 30 minutes. R. 56. Woodson needs reminders from his fiancée to take his medication, take his clothes out of the washing machine, and to

go to doctor's appointments. R. 58.

On May 29, 2019, Dr. Kathleen Ronan evaluated Woodson. Dr. Ronan noted that Woodson was "mostly cooperative but became evasive at times." R. 883. She observed Woodson's unclear summary of his mental health history could have been related to memory issues or evasiveness. R. 883. Dr. Ronan also noted that Woodson's speech was normal, his immediate memory was intact, his recent memory was mostly intact, and his remote memory was reduced. R. 884. Dr. Ronan concluded that Woodson had developmental post-traumatic stress disorder, depressive disorder, and anxiety disorder. R. 885. She found that Woodson could understand simple and complex instructions but may have trouble executing those instructions due to his psychiatric issues. R. 886. She also stated that Woodson could "recall simple or complex instructions after 15 to 30 minutes." R. 886. The ALJ found Dr. Ronan's opinion to be somewhat persuasive because it was consistent with her own examination findings but inconsistent with the rest of the medical record. R. 26.

## IV. DISCUSSION

Woodson argues on appeal that (1) the ALJ erred in finding Dr. Ronan's opinion to be somewhat persuasive, and (2) the ALJ lacked substantial evidence to find that Woodson's mental impairments are not severe. Doc. 12 at 4–8, 9–13. The court addresses each of these arguments below.

## A.  Medical Opinion Evidence

Woodson argues that the ALJ erred in finding Dr. Ronan's opinion to be somewhat persuasive. Doc. 12 at 4.  Specifically, he claims that the ALJ misrepresented portions of Dr. Ronan's opinion and substituted her own judgment "for that of the medical and vocational experts." Doc. 12 at 6 & 13.  The Commissioner argues that there is substantial evidence to support the finding that Dr. Ronan's opinions were somewhat persuasive. Doc. 16 at 6.  The court agrees with the Commissioner for the following reasons.

On January 18, 2017, the Social Security Administration published final rules titled "Revision to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844; *see also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Reg. 5844).  Because these rules were effective as of March 27, 2017, and Woodson applied for benefits after that date, the new rules apply to his claim.  Under the new rules, the Commissioner must "make every effort to obtain from [an] individual's treating physician . . . all medical evidence, including diagnostic tests, necessary in order to properly make [a disability] determination, prior to evaluating medical evidence obtained from any other source on a consultative basis." 42 U.S.C. §§ 423(d)(5)(B) & 1382c(H)(i).  But the rules do not specify how the ALJ must evaluate treating source evidence, and the Eleventh Circuit recently confirmed that the new regulations eliminate the treating physician

rule. *Harner v. Soc. Sec'y Admin., Comm'r*, __ F.4th __, 2022 WL 2298528, at *3–4 (11th Cir. June 27, 2022).

The ALJ should consider the following factors in reviewing a doctor's opinion: (1) supportability, (2) consistency, (3) the relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). While the ALJ must explain how she considered supportability and consistency in her decision, she need not to explain how she considered the remaining factors. 20 C.F.R. § 404.1520c(b)(2). And the ALJ need not articulate how she considers each medical opinion or prior administrative medical finding; the application of each factor to all the medical evidence is sufficient. 20 C.F.R. § 404.1520c(b)(1).

Here, the ALJ had substantial evidence to assess Dr. Ronan's medical opinions as somewhat persuasive. *See Thomason*, 2021 WL 4061423 at *7 (finding that "so long as the finding of the ALJ is supported by substantial evidence, it must be affirmed by this Court"). Dr. Ronan's opinion about Woodson's ability to concentrate and sustain work activity is not consistent with or supported by the entirety of the objective medical record. Her medical report noted that Woodson's "[a]ttention and concentration were a bit variable due to emotional state and perhaps some mild organicity as shown [by] mild digression, or interruption in processing during interview or tasks." R. 884. Dr. Ronan further noted that Woodson was able

11

to recall simple or complex instructions after 15 to 30 minutes. R. 886. In contrast, Kenya Wilcox, Woodson's therapist, found that Woodson was "able to effectively process information without cognitive barriers" and his remote memories were intact.[3] R. 924. Dr. Mohammad Aryanpure of Bear Creek Family Practice likewise saw Woodson on May 21, 2019 and noted that his attention and concentration were normal. R. 878.

Because Dr. Ronan's opinion was not entirely supported by or consistent with the remaining medical evidence, the ALJ had substantial evidence to support the decision to find her opinion to be somewhat persuasive. *Miller v. Kijakazi*, 2021 WL 4190632, at *7 (N.D. Ala. Sept. 14, 2021) (affirming the ALJ's finding that the opinion of plaintiff's treating psychiatrist was inconsistent with and unsupported by the medical record and therefore unpersuasive).

## B.     Mental Impairments

Woodson next argues that substantial evidence does not support the ALJ's determination of a moderate limitation in each of the four mental impairment categories. Doc. 12 at 9. Specifically, Woodson contends that the ALJ improperly weighed Dr. Ronan's medical opinion and Woodson's hearing testimony. Doc. 12

---

[3] The ALJ erroneously stated that Dr. Norman Huggins made these observations. R. 23. This error is harmless. Wilcox is a Licensed Master Social Worker and saw Woodson for regular therapy sessions. R. 918–21, 923–26, 929, 933, 936, 939–48.

at 9–12. The Commissioner argues that substantial evidence supports the ALJ's determination. Doc. 16 at 15. The court agrees with the Commissioner.

First, the court rejects Woodson's claim that the ALJ did not properly consider Dr. Ronan's opinion or Woodson's hearing testimony. The ALJ is not required to "mechanically recite the evidence leading to her determination." *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986). And "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection,'" which would prevent the reviewing court from determining whether the ALJ considered the claimant's entire medical condition. *Mitchell v. Comm'r of Soc. Sec., Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). Here, the ALJ's decision establishes that she considered the entire medical record, including Dr. Ronan's opinions and Woodson's testimony, since she cited to the medical record, to Woodson's function report, and to the hearing testimony. R. 19–20. Accordingly, the ALJ's determination was not a broad rejection of an impairment, and the court can determine that the ALJ adequately considered the entirety of the record. *See, e.g.*, *Jones v. Kijakazi*, 2022 WL 971988, at *13 (S.D. Ala. Mar. 30, 2022) (finding that the "whole of the ALJ's decision (i.e., his discussion of the evidence at a five steps) adequately indicates that he considered the record as a whole").

Second, the ALJ did not err in her evaluation of Woodson's mental impairments. Medically determined mental impairments are evaluated with reference to four broad functional areas known as the "paragraph B" criteria relating to the claimant's (1) ability to understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage himself. 20 C.F.R. 404, Subpart P, Appendix 1, 12.00(A)(2)(b). These four areas are assessed on a scale ranging from no limitation to extreme limitation. 20 C.F.R. Subpart P, Appendix 1, 12.00(F)(2)(a)–(e). The limitation designations are determined on a case-by-case basis based on evidence of a claimant's clinical and laboratory findings, effects of symptoms, effects of chronic mental disorders, effects of structured settings, effects of medications, and other information. 20 C.F.R. § 404.1520a(c).

### a. *Understanding, Remembering, and Applying Information*

Substantial evidence supports the ALJ's determination that Woodson had a moderate limitation in understanding, remembering, and applying information. Woodson exhibited his ability to understand and remember information during the hearing with the ALJ. For example, when asked about his medical history, Woodson could recall and explain his medical history from 2003 to 2017. R. 43–49. And Woodson had been able to give Dr. Ronan a detailed medical history. R. 881–82. Another treating source, Kenya Wilcox, also found Woodson's remote memories to

be intact. R. 924. On the other hand, Woodson claimed that he needs reminders to take his medication, do household chores, and execute spoken instructions. R. 249, 252. Considering the totality of this evidence, the court finds substantial evidence supporting the ALJ's finding that Woodson had a moderate limitation in this area of functioning. *See Skipper v. Kijakazi*, 2022 WL 1132164, at *6 (S.D. Ala. Apr. 15, 2022) (affirming the ALJ's moderate limitation determination based on the claimant's ability to recall his medical history and work history during his hearing and the medical evidence in the record).

### b. *Interacting with Others*

Substantial evidence supports the ALJ's determination that Woodson had a moderate limitation in the functional area of interacting with others. During the hearing, Woodson testified that he has "extreme anxiety around people" and does not get along with authority figures. R. 252–53. But he also testified that he lives with his fiancée and son, who he takes to the park and to some of his doctors' appointments. R. 251. Notes in Woodson's medical record confirm that he was cooperative and calm while interacting with the medical staff during doctor visits. *See, e.g.*, R. 859, 915, 918, 924, 933, 1046, 1062 & 1065. The ALJ took this evidence into account and assessed Woodson's mental impairment as moderate in this area. R. 19. The court finds no error in this determination. *See Skipper*, 2022 WL 1132164 at *6 (affirming the ALJ's moderate limitation determination based on

the claimant's testimony regarding his nerves around other people and his daily social activities with family).

### c. *Concentrating, Persisting, and Maintaining Pace*

Substantial evidence also supports the ALJ's determination that Woodson had moderate limitations in concentrating, persisting, or maintaining pace. R. 19. Some of Woodson's medical records reflect that he has displayed mild deficits in attention and concentration. R. 884. He also testified to having some difficulty with concentration. R. 56; *see* R. 252. On the other hand, other records indicate that he has normal attention and concentration ability, R. 878, or only a mild interruption in his ability to process information. R. 884. The court finds that this amounts to substantial evidence supporting the ALJ's determination of a moderate limitation in this area. *See Lee v. Astrue*, 2012 WL 4479288, at *8 (N.D. Ala. Sept. 26, 2012) (affirming the ALJ's moderate limitation determination based on the claimant's medical reports indicating a normal affect and demeanor in addition to his daily activities).

### d. *Adapting and Managing Himself*

Finally, substantial evidence supports the ALJ's determination that Woodson had a moderate limitation in adapting or managing himself. R. 20. Woodson reported that he does not handle stress or changes in his routine well. R. 253. Woodson also believes stress contributes to the frequency of his seizures, R. 41, and

his medical records confirm an anxious mood following one seizure. R. 739. On the other hand, the record reflects that Woodson did not consistently take his medication. R. 696. And Woodson admits he can make some meals, feed himself, pick up around the house, do his own laundry, count change, and use a checkbook or money orders. R. 249–250. Considering all of this evidence, the court finds that substantial evidence supported the ALJ's finding of a moderate limitation in this area. *See Harvey v. Soc. Sec. Admin., Comm'r*, 2021 WL 4458868, at *5 (N.D. Ala. Sept. 29, 2021) (affirming the ALJ's moderate limitation determination based on the claimant's function report and medical record).

## V. CONCLUSION

For these reasons, the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Accordingly, the decision of the Commissioner is due to be affirmed. A final judgment will be entered separately.

DONE and ORDERED on August 16, 2022.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE